UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL JASMIN,

                Plaintiff,

-v-                               No. 04 Civ. 10237 (LTS)(AJP)

NEW YORK STATE DEPT. OF LABOR.,

                Defendant.

OPINION AND ORDER

APPEARANCES:

PAUL JASMIN                          ATTORNEY GENERAL OF THE STATE
535 Parkside Avenue, Apt. 2E     OF NEW YORK
Brooklyn, NY 11226                By: Katherine Timon, Esq.
                                         120 Broadway, Rm 24-102
                                         New York, NY 10271

*Plaintiff Pro Se*                       *Attorney for Defendant*

LAURA TAYLOR SWAIN, United States District Judge

Paul Jasmin, the pro se Plaintiff in this action, is a black American of Haitian descent. He alleges that the New York State Department of Labor ("Defendant" or "DOL") violated his federal and state statutory rights to be free from prohibited discrimination by denying him wage increases, denying him certain training and work experience, and terminating his employment. Plaintiff brings federal and state claims of race, color, and national origin discrimination, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the New York State Human Rights Law. Plaintiff seeks, inter alia, equitable and injunctive relief as well as compensatory and punitive damages.

The Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 of Plaintiff's state law claims.

Defendant's motion for summary judgment dismissing Plaintiff's complaint in its entirety is now before the Court. Defendant's motion papers were accompanied by a Statement pursuant to S.D.N.Y. Local Civil Rule 56.1, as well as the Notice to Pro Se Litigant Opposing Motion for Summary Judgment as required by Local Civil Rule 56.2, and a number of evidentiary submissions. Plaintiff's responsive papers included a memorandum of law, an affidavit, and copies of several documents. The Court notes that, although Plaintiff has not submitted the required response to Defendant's Rule 56.1 Statement and Defendant's factual proffers could for that reason be taken as admitted under Local Civil Rule 56.1(c), the Court has examined carefully Plaintiff's memorandum of law, affidavit, and other evidentiary proffers in determining whether there are genuine issues of material fact. The Court has also considered

carefully Defendant's memoranda and accompanying affidavits and exhibits. For the following reasons, Defendant's motion is granted.

## BACKGROUND

The material facts are undisputed unless stated otherwise. From at least 1990[1] until his termination on November 22, 2002, Plaintiff was employed in the Public Employees Safety and Health ("PESH") unit of DOL. (See Def.'s Rule 56.1 Stmt. ¶ 1.)[2] At the time of his termination, Plaintiff was a senior industrial hygienist in the PESH unit. (See id.) Since 1970, Frank Fazzio ("Fazzio") has been employed in various capacities at DOL. (See Frank Fazzio Aff. in Supp. of Mot. for Summ. J., "Fazzio Aff.," ¶ 1.) From June 1997, Fazzio was employed as PESH Program Manager, with the exception of the period from September 1999 through January 2001, during which time he was employed as Labor Commissioner of Nassau County, New York. (See id. ¶ 4.) During his tenure as Program Manager, Fazzio indirectly supervised Jasmin. That is, Jasmin's direct supervisors reported to Fazzio. (See id. ¶ 7.) Fazzio alleges that from 1988 to January 1997, he was acquainted with Jasmin and that they worked on the same floor but that he did not supervise Jasmin directly or indirectly. (See id. ¶ 8.)

Defendant proffers, and Plaintiff does not appear to dispute, that Plaintiff received

---

[1] The Court notes that Plaintiff contends that he was employed beginning in "July 1998 – not 1990." (See Mem. of Law in Opp. and Obj. to Evid., Paul Jasmin Affidavit/Affirmation, "Jasmin Aff.," at 1.) Based on the timeline of events, the Court assumes that Plaintiff intended to indicate "July 1988."

[2] References to the Defendant's N.Y.S.D. Local Civil Rule 56.1 Statement, to which Plaintiff filed no specific response, are deemed to include references to Defendant's underlying evidentiary submissions.

approximately thirteen advanced training courses from March 1990 to November 1994 beyond what is now considered a "core curriculum" of courses. (See Def.'s Rule 56.1 Stmt. ¶¶ 57; 60.) The proffered evidence indicates, and the parties do not appear to dispute, that Plaintiff did not receive any training courses after 1994. Plaintiff specifically contends that he did not receive any training after Fazzio became Program Manager. (See Jasmin Aff. at 16.)

Defendant proffers and Plaintiff does not dispute that, from the 1990s until 2001, the training budget did not accommodate sending many employees to training courses and that, beginning in 2001, DOL established a "core curriculum" of training programs for employees working in the PESH unit. (See Norman R. Labbe Aff. in Supp. of Mot. for Summ. J, ("Labbe Aff.") ¶¶ 8-14; Def.'s Rule 56.1 Stmt. ¶ 62.) These training courses appear to be entry level training courses that were newly-designated as core classes; Defendant alleges that Plaintiff had already received training in these subjects. (See Labbe Aff., ¶¶ 8, 10.) Defendant proffers that these new core training programs were primarily offered to new employees and that it made efforts to accommodate more senior employees who, in the 1990s, had not had an opportunity to be trained in these core classes. (See id. ¶¶ 11-12.) More senior employees were evaluated on a case-by-case basis as space and budget permitted. (See Def's Rule 56.1 Stmt., ¶¶ 63-64.)

On March 12, 1991, DOL received a complaint against Jasmin from a Caucasian female employee, who indicated that Jasmin made unwanted sexual advances toward her. (See id. ¶ 3.) As a result, in a meeting on March 27, 1991, Jasmin was told not to contact the female employee. Fazzio was present at this meeting. Jasmin alleges that, during this meeting, Fazzio harassed and intimidated him. (See Compl. ¶ 16.) On June 25, 1991, Jasmin filed a Complaint of Discrimination with the New York State Division of Human Rights ("DHR") against DOL for

discrimination based on race and national origin, and retaliation in connection with alleged remarks and actions of Fazzio during the March 27 meeting. (See Def.'s Rule 56.1 Stmt. ¶ 4.) On October 2, 1998, DHR dismissed the Complaint based on administrative convenience because Jasmin planned to bring an action in the United States District Court. (See id. ¶ 5.)

On October 26, 1998, Jasmin filed, in this District, a case against the DOL asserting, among other things, claims under Title VII for deprivation of "employment opportunities," in which his underlying allegations included references to the March 27, 1991, meeting, certain 1996 and 1997 disciplinary charges, and remarks allegedly made by Fazzio to another employee to the effect that he would "get Jasmin" for dating a white woman. In a December 20, 1999, Opinion and Order, this Court (Cote, J.) granted summary judgment in the DOL's favor as to all Plaintiff's claims except a hostile work environment claim concerning the March 27, 1991, meeting. (Jasmin v. N.Y.S. Dep't of Labor, 98 Civ. 7569 (DLC), 1999 U.S. Dist. LEXIS 19672 (S.D.N.Y. Dec. 20, 1999), annexed as Ex. A to Deutsch Aff.) After a trial on this remaining issue Judge Cote, on March 7, 2000, found that Plaintiff's allegations concerning Fazzio's actions and remarks at the 1991 meeting were not credible and consequently entered judgment in favor of DOL dismissing the hostile work environment claim. (See Def.'s Rule 56.1 Stmt. ¶¶ 15-16.)

Plaintiff was served with a Notice of Discipline dated April 13, 2001, in connection with allegations of falsification of official DOL labor and time attendance sheets. (See id. ¶¶ 17-26.) Specifically, DOL alleged that on several occasions in February 1999, Plaintiff falsely charged family sick leave time to DOL while he was actually performing work for the New York City Department of Homeless Services and that, between March 1999 and May

1999, Plaintiff falsely claimed a greater number of DOL hours than he actually worked. (See id. ¶¶ 17, 19, 20-21.) DOL performed an internal investigation prior to issuing the Notice of Discipline, and found that the falsified family sick leave attendance records amounted to a loss of $1,458.30 and that the falsified time sheets amounted to a loss of $756.71. (See id. ¶ 21.) The April 13, 2001, Notice of Discipline provided that the penalty to be imposed for the alleged misconduct would be termination of employment and forfeiture of all annual leave credits. (See id. ¶ 26.) Defendant has proffered affidavits asserting that Fazzio was neither involved in the initiation of the investigation or the decision to issue the Notice of Discipline and denying that the decision was based on any consideration of Plaintiff's race, ethnic background, or any prior ligation or complaints brought by Plaintiff against DOL or any of its employees. (See Darlene Shattuck Aff. in Supp. of Mot. for Summ. J., ("Shattuck Aff.,") ¶¶ 35-36; David Gillespie Aff. in Supp. of Mot. for Summ. J., ("Gillespie Aff.") ¶¶ 10, 11; Fazzio Aff. ¶¶ 13-17.)

On May 1, 2001, Plaintiff filed a grievance in which he denied all the charges in the April Notice of Discipline. (See id. ¶¶ 31-32.) On May 21, 2001, DOL informed Plaintiff that his grievance was denied and that he had fourteen days to request arbitration in connection with the charges. (See id. ¶ 33.) On or before June 1, 2001, Plaintiff appealed the Notice of Discipline and requested arbitration on the matter pursuant to his collective bargaining agreement with DOL. (See id. ¶ 34.)

An arbitration was subsequently held in connection with the April 2001 Notice of Discipline. After exchanging discovery via letters, arbitration hearings were held on April 10, May 1, May 24, August 12, and August 13, 2002. (See id. ¶¶ 35-36; Shattuck Aff., Ex. A, at 1.) Plaintiff was represented by his union in connection with the arbitration proceedings. (See

Shattuck Aff., Ex. A at 1.) Both parties presented witnesses and documentary evidence during the proceedings. (See Def.'s Rule 56.1 Stmt. ¶¶ 37-40.) Plaintiff and Fazzio testified at the hearing. (See id. ¶¶ 37, 41.) On October 2 and October 4, 2002, respectively, both parties also submitted post-hearing arguments. (See id. ¶¶ 42-43.) On November 16, 2002, the arbitrator issued an arbitration award in which he denied Plaintiff's grievance, found Plaintiff guilty of the charges in the April 2001 Notice of Discipline and concluded that DOL could go forward and impose the penalty of termination of Plaintiff's employment. (See id. ¶ 44.) In making his findings, the arbitrator concluded that Plaintiff's allegations that the April 2001 Notice of Discipline was the result of Fazzio's retaliation "against him for his prior filing of complaints against [Fazzio] and that such retaliation rises to the level of discrimination" were not persuasive or credited. (Shattuck Aff., Ex. A at 7.) In accordance with the arbitration award, on November 22, 2002, Plaintiff was terminated as an employee of DOL. (See Def.'s Rule 56.1 Stmt. ¶ 49.)

On February 19, 2003, Plaintiff filed a Petition pursuant to Article 75 of the New York State Civil Practice Law and Rules seeking to annul the arbitration award. (See id. ¶ 52.) On July 12, 2004, the New York State Supreme Court dismissed Plaintiff's Petition. (See id. ¶ 53.) According to Defendant, Plaintiff's state court petition included allegations that his representative at the arbitration proceeding had conspired with DOL and the arbitrator, and that the arbitrator "'had ulterior motives' in terminating Mr. Jasmin's employment." (See Alan Deutsch Aff. in Supp. of Mot. for Summ. J. ("Deutsch Aff."), ¶ 20.) DOL has not provided the Court with copies of the Petition or of the state court decision, but Plaintiff has not disputed Defendant's account of the state court proceedings.

On August 18, 2003, Plaintiff filed a Complaint of Discrimination with DHR that

charged DOL with discrimination on the basis of race, color, national origin, and retaliation in connection with the April 2001 Notice of Discipline. (See id. ¶ 54.) Plaintiff alleged that Fazzio brought him up on disciplinary charges in retaliation for having filed previous complaints. (See id. ¶ 54.) On July 13, 2004, DHR dismissed Plaintiff's complaint on the grounds of administrative convenience because Plaintiff planned to bring an action in United States District Court. (See id. ¶ 55.)

The instant action was filed on December 27, 2004. In his pro se Complaint, which cites DOL's original 1988 failure to hire him as an Industrial Hygienist Trainee and subsequent agreement to hire him as an Industrial Hygienist in that same year, the March 27, 1991, meeting regarding the female employee's alleged complaint of sexual harassment, and the denial of relief in the earlier federal court litigation, Plaintiff alleges that "threats, harassment, verbal abuses and intimidation continued after Judge Coti's [sic] decision and in fact escalated." (Compl. ¶¶ 10-18.) Plaintiff alleges, inter alia, that his termination, lack of training and experiences, and lack of wage increases were the result of discrimination based on race, national origin and of retaliation for his filing discrimination complaints and seeking judicial action. (Compl. ¶ 20.) Plaintiff seeks equitable and injunctive relief as well as compensatory and punitive damages. (Id. at 7-8.)

In his affidavit in connection with the instant motion practice, Plaintiff makes a number of allegations relating to the April 2001 Notice of Discipline, the subsequent arbitration, and Fazzio's alleged involvement in these actions. Specifically, Plaintiff denies completing falsified time sheets and alleges that Defendant had used forged documents in connection with the disciplinary charges. (See Jasmin Aff. at 3.) With regard to the arbitration, Plaintiff alleges

that he was not given sufficient time to complete discovery, to bring witnesses, or produce documents, that the arbitrator was biased in favor of Defendant and that his union-appointed representative conspired against him. (See id. at 4-6.) Plaintiff also alleges that Fazzio discriminated against him based on his race and national origin and that he was primarily responsible for initiating the April 2001 Notice of Discipline and Plaintiff's eventual termination. (See id. at 3, 11-12.) Plaintiff also proffers an affidavit from Harold Yodice ("Yodice"), an employee of the New York City Fire Department. The affidavit asserts that, on a number of occasions between 1999 to 2003, Fazzio made discriminatory remarks about Jasmin (e.g., "Haitian nigger," a "stupid Haitian") in Yodice's presence and stated "[t]hat he (Frank Fazzio) was going to make Paul Jasmin regret that he ever touched white girls and that he ever took him (Frank Fazzio) to Federal Court and that he going to [sic] get Paul Jasmin terminated." (See id., Ex. A.) The proffered evidence indicates that Yodice did not testify at the arbitration proceeding. (See Shattuck Aff., Exs. A-B.) In his affidavit, Plaintiff also states that he was denied training while Fazzio was his indirect supervisor. (See Jasmin Aff. at 16.)

Defendant proffers an affidavit from Fazzio in which he denies knowing Yodice or making racial remarks about Jasmin in front of Yodice. (See Frank Fazzio Reply Aff. in Supp. of Summ. J., ¶ 4.) Defendant also proffers a number affidavits by persons involved with the 2001 Notice of Discipline, in which the affiants deny that Fazzio was involved in the investigation or the issuance of the 2001 Notice of Discipline and assert that the Notice of Discipline was not based on any consideration of Plaintiff's race, ethnic background, or any prior ligation or complaints brought by Plaintiff against DOL or any of its employees. The record before the Court also includes the arbitrator's decision upholding the time record falsification

charges and finding unpersuasive Plaintiff's allegations that Fazzio was retaliating against him for his complaints of discrimination. Finally, Defendant proffers an affidavit documenting the training courses that were provided to Plaintiff, which include training in the areas that are what is now designated as "core."

## DISCUSSION

Summary judgment shall be granted in favor of a moving party where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In the summary judgment context, a fact is material "if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Second Circuit has explained that the "party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (alteration in original)). "[M]ere conclusory allegations, speculation or conjecture," will not provide a sufficient basis for a non-moving party to resist summary judgment. Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d

Cir. 1996).

Plaintiff asserts two causes of action in his Complaint. In his first cause of action, Plaintiff alleges that Defendant "prosecuted [him] more than one year after alleged felonious crime was committed [sic], without due process and safeguards" and that he was "terminated . . . and deprived of employment opportunities and unemployment benefits on account of his race and national origin in violation of Title VII." (Compl. ¶¶ 22, 24.) In his second cause of action, Plaintiff incorporates by reference all the allegations in his first claim and alleges a violation of the Human Rights Law of the State of New York. (Id. ¶¶ 1-2.) Defendant interprets these causes of action as allegations of discrimination and retaliation in connection with Plaintiff's termination, alleged lack of training and experience and lack of wage increases, in violation of Title VII and New York State Human Rights Law. As Plaintiff's opposition papers appear to adopt this construction, the Court will construe the causes of action in the same manner. Cf. Jasmin v. N.Y.S. Dep't of Labor, 98 Civ. 7569 (DLC), 1999 U.S. Dist. LEXIS 19672, at *6-7 (S.D.N.Y. Dec. 20, 1999). Defendant argues that the claims fail on their merits.

Defendant seeks summary judgment dismissing Plaintiff's complaint in its entirety. Title VII discrimination and retaliation claims are analyzed under the three-step burden shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996) (applying burden-shifting analysis to retaliation claims.)[3]

---

[3] Plaintiff's discrimination claims under New York Human Rights Law are subject to the same standard of proof as claims under Title VII. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000); Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000).

In the context of a motion for summary judgment, a plaintiff must first establish a prima facie case of discrimination or retaliation. Id. To establish a prima facie case of discrimination under Title VII, a plaintiff must show that he belongs to a protected class, that his job performance was satisfactory, and that he suffered an adverse employment decision under circumstances that suggest his status as a member of protected class was a factor. See id.; Song v. Ives Labs., Inc., 957 F.2d 1041, 1045 (2d Cir. 1992); Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir. 1985). Here, it is undisputed that Plaintiff belongs to a protected class. To establish the second prong of satisfactory job performance, a plaintiff need only "demonstrate that [he] possesses the basic skills necessary for performance of [the] job." See Owens v. N.Y. Hous. Auth., 934 F.2d 405, 409 (2d Cir. 1991) (internal quotations and citations omitted). The Court finds that Plaintiff has met the minimal burden of showing satisfactory job performance. The Court notes here that, even though Plaintiff was cited for misconduct on several occasions, there is no evidence indicating that he lacked the basic skills of an employee in the PESH unit. See Owens, 934 F.2d at 409 (noting in the summary judgment context that despite finding of misconduct, a plaintiff may have the ability to perform his duties to establish satisfactory job performance for prima facie discrimination claim).

"To make out a prima facie case of retaliation, an employee must show that he was engaged in a protected activity; that he suffered an adverse employment decision; and a causal connection between the protected activity and the adverse employment decision." See Taitt v. Chemical Bank, 849 F.2d 775, 777 (2d Cir. 1988). Protected activity in this context includes formal as well as informal complaints. See Rodriguez v. Beechmont Bus Serv., Inc., 173 F. Supp. 2d 139, 149 (S.D.N.Y. 2001). "A plaintiff can demonstrate a causal connection (a)

indirectly by showing that the protected activity was followed closely by discriminatory treatment; (b) indirectly through other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of retaliatory animus." See Carr v. West LB Admin., Inc., 171 F. Supp. 2d 302, 309 (S.D.N.Y. 2001) (citing DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987)). Plaintiff alleges retaliation for discrimination complaints and judicial action. Though not specified in the Complaint, Plaintiff's affidavit and the prior proceedings would suggest that the referenced complaints and judicial action include the 1991 DHR complaint filed by Jasmin and the 1998 judicial action filed in this District, which included complaints relating to a 1996 and 1997 Notice of Discipline and allegations surrounding a 1998 conversation with Fazzio.

Once a plaintiff has made out a prima facie case, the burden shifts to the employer to offer some legitimate, nondiscriminatory rationale for its actions. McDonnell Douglas Corp., 411 U.S. at 802. An employer sustains its burden "by producing *any evidence* of nondiscriminatory reasons, whether ultimately persuasive or not." Weeks v. N.Y. State Div. of Parole, No. 00 Civ. 5865 SJ, 2002 WL 32096593, at *4 (E.D.N.Y. Nov. 25, 2002) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). "The employer need not prove by a preponderance of the evidence that the reasons for his action were not discriminatory, but may simply present clear and specific reasons for the action." Gibbs v. Consolidated Edison Co. of N.Y., Inc., 714 F. Supp. 85, 89 (S.D.N.Y. 1989) (internal quotations omitted). If the employer meets its burden, the plaintiff then is required to show that the defendant's stated reason is a pretext for the prohibited discrimination. Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000).

The Court will first analyze Plaintiff's Title VII discrimination and retaliation

claims relating to his termination from DOL. It is questionable whether Plaintiff has made out a prima facie claim of discrimination or retaliation. While it is undisputed that Plaintiff's termination constituted an adverse employment action, it is not clear that Plaintiff has met his burden of showing a reasonable basis for an inference that his status as a member of a protected class was a factor in his termination or that his complaints/judicial action were causally connected to his termination. The gravamen of Plaintiff's evidentiary support here is alleged discriminatory and threatening remarks made by Fazzio. Although Plaintiff has proffered no specific evidence of Fazzio's involvement in the pre-termination investigation, the time falsification charges or the termination decision, the Court will assume for purposes of this analysis that the temporal relationship among the alleged remarks, the various proceedings and the termination is sufficient to support an inference of improper motivation.

   Defendant has proffered a legitimate nondiscriminatory reason (the April 2001 Notice of Discipline regarding forged time sheets and the arbitrator's decision after the hearing on the merits of the charges) for Plaintiff's termination. The Court finds that Plaintiff has not satisfied his burden of coming forward with evidence sufficient to frame a genuine issue of fact as to whether the proffered reason is a pretext for the alleged discrimination and retaliation. The Court notes here that an arbitrator found, after conducting hearings where both sides presented evidence and witnesses, just cause for the April 2001 Notice of Discipline and found Plaintiff's allegations relating to retaliation by Fazzio unpersuasive. At the summary judgment phase, an independent arbitrator's decision, after a fair hearing based on substantial evidence, is given favorable consideration in making a determination as to whether Plaintiff has met its burden to make out a Title VII claim. See Collins v. New York City Trans Auth., 305 F.3d 113, 115 (2d

Cir. 2002). Furthermore, Defendant has proffered affidavits asserting that Fazzio was neither involved in the initiation of the investigation or the decision to issue the Notice of Discipline and denying that the decision was based on any consideration of Plaintiff's race, ethnic background, or any prior litigation or complaints brought by Plaintiff against DOL or any of its employees. Plaintiff has not proffered any evidence beyond conclusory allegations to rebut this evidence or otherwise demonstrate that the time falsification charges were merely a pretext for the alleged discrimination or retaliation.

Turning to Plaintiff's allegations of discriminatory or retaliatory denial of training and experience and wage increases, the Court concludes, on the instant record, that Plaintiff has not satisfied his burden of making out a prima facie case. Plaintiff has failed to proffer any evidence beyond conclusory allegations that he even suffered an adverse employment action in connection with the alleged lack of training and experience or wage increases. He alleges that unspecified other employees "received about 20 additional courses" beyond the core class but does not offer any evidence of who these people were, whether they were similarly situated, or what training they received. (See Jasmin Affidavit/Affirmation dated November 14, 2005, ¶¶ 35-36.) Nor does he even allege that he applied for, and was denied, authorization to participate in training courses. Furthermore, Defendant has proffered evidence that Plaintiff was in fact provided significant training, which included training in what are now considered the core areas. In connection with his allegation of lack of wage increases, Plaintiff does not provide any evidence to support his allegations in the Complaint that he was denied any wage increase. Nor, for substantially the reasons discussed above, is there a basis in the record for determining that Plaintiff has framed a genuine issue of material fact as to whether any denial of training or wage

increases was the product of discrimination or retaliation.

Accordingly, Defendant is entitled as a matter of law to summary judgment dismissing all of Plaintiff's claims.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in its entirety. The Clerk of Court is respectfully asked to enter judgment in Defendant's favor and close this case.

SO ORDERED.

Dated: New York, New York
       June 15, 2007

/s/ Laura Taylor Swain

LAURA TAYLOR SWAIN
United States District Judge

Copies mailed  6/15/07
Chambers of Judge S...